**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| URETEK (USA), Inc., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-11-3060 |
| | § | |
| URETEKNOLOGIA de MEXICO | § | |
| S.A. de C.V., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION ON POSTTRIAL MOTIONS**

This Memorandum and Opinion addresses the posttrial motions filed in this contract dispute. The jury found that the plaintiff, Uretek (USA) Inc., had ratified a June 2010 First Amendment to a March 2003 Sublicense Agreement with the defendant, Ureteknologia de Mexico ("UdeM"). The jury also found that Uretek had agreed to, and ratified, a June 2010 release of claims against UdeM. Under the jury verdict, UdeM did not breach the 2003 Sublicense Agreement and owed no damages to Uretek. The court accepted the verdict.

Uretek has moved for a ruling that specific performance of the 2003 Sublicense Agreement is not an appropriate remedy and that no declaratory judgment should issue. (Docket Entry No. 59). UdeM responded. (Docket Entry No. 63). UdeM filed a motion for final declaratory judgment that the 2003 Sublicense Agreement as modified by the June 2010 First Amendment is valid, enforceable, and binding; that Uretek's attempted termination of the Sublicense Agreement is invalid and ineffective; that the June 2010 Release is valid, enforceable, and binding; and that Uretek must specifically perform the 2003 Sublicense Agreement and is enjoined from violating its exclusivity and the noncompete provisions, as amended by the June 2010 First Amendment, for the remaining

10-year contract term.  UdeM also sought specific performance and an injunction requiring Uretek to comply with the exclusivity and noncompete provisions.  Finally, UdeM seeks its attorney's fees. (Docket Entry No. 60).

Uretek filed a response, (Docket Entry No. 61), and a renewed motion for judgment as a matter of law as to UdeM's affirmative defense of ratification of the June 2010 First Amendment to the 2003 Sublicense Agreement.  (Docket Entry No. 58).  UdeM responded to that motion. (Docket Entry No. 64).

Based on the motions and responses, the record, and the applicable law, this court:

- denies Uretek's renewed motion for judgment as matter of law;

- grants in part and denies in part UdeM's request for a declaratory judgment;

- denies UdeM's request for specific performance; and

- grants UdeM's request for attorney's fees and expenses.

This court holds that:

- UdeM is entitled to a declaratory judgment that the 2003 Sublicense Agreement as modified by the May 2010 Agreement and the June 2010 First Amendment is valid; that Uretek's attempt to terminate the 2003 Sublicense Agreement breached that Agreement as modified; and that the June 2010 Release is valid.  UdeM's request for a declaratory judgment that it is entitled to specific performance, including of the exclusivity provision and the noncompete provisions of the 2003 Sublicense Agreement, is denied.

- UdeM's request for specific performance is denied.

2

- UdeM's request for $211,609.88 in attorney's fees and $7,281.88 in costs from Uretek is granted.

No later than **July 12, 2013**, after conferring with Uretek, UdeM must submit a proposed final judgment.

The reasons for these rulings are explained in detail below.

## I.    Background

The facts can be briefly summarized.  Uretek licensed to UdeM patented technology for concrete rehabilitation and repair using Uretek's expansive polyurethane foam.  The 2003 Sublicense Agreement allowed UdeM to use and sell these processes and products in the Republic of Mexico.  The 2003 Agreement required UdeM to purchase from Uretek a specified amount of Uretek's proprietary polyurethane foam, 486 Star, each year from 2004 through the contract term. The Agreement granted UdeM an exclusive sublicense to provide and distribute current and future Uretek processes and products within Mexico, and prohibited Uretek from competing with UdeM. The Agreement also restricted UdeM from purchasing 486 Star and other materials from companies besides Uretek.

In this lawsuit, Uretek alleged that in 2007, 2008, and 2010, UdeM failed to purchase the amount of polyurethane the 2003 Sublicense Agreement required.  Uretek also alleged that UdeM refused to pay the agreed price for the foam and services Uretek provided on a project in Mexico City that Uretek worked on with UdeM in December 2009. Uretek alleged that in May 2010, a UdeM representative met with Uretek's president, Brent Barron.  After two meetings, in June 2010, Barron signed what Uretek contended was a draft amendment to the 2003 Sublicense Agreement and what UdeM contended was the final June 2010 First Amendment.  In this lawsuit, Uretek denied

that it signed the June 2010 Amendment to the Sublicense Agreement with an intent to be bound. Although Barron wrote his initials on the June 16, 2010 First Amendment (and the June 16, 2010 Release), Uretek contended that Barron was told by UdeM's representative that the Amendment was a draft that would be revised further.  Uretek contended that Barron initialed each page intending to indicate that he had read them, not that he agreed to them.

Uretek sought a declaratory judgment that the June 2010 First Amendment and 2010 Release to the Sublicense Agreement never became effective and that UdeM breached the 2003 Sublicense Agreement.  Uretek also sought its attorney's fees.  Uretek contended that it terminated the Sublicense Agreement because UdeM failed to purchase the required amounts of polyurethane foam in 2007, 2008, and 2010 and failed to pay the full price for the foam and services that it did purchase for the Mexico City project in December 2009.

UdeM answered and asserted affirmative defenses to the breach of contract claims, including ratification and release.  UdeM alleged that in the June 2010 First Amendment, the parties agreed to amend the 2003 Sublicense Agreement, including removing the prior requirement that UdeM buy a minimum amount of polyurethane foam from Uretek each year.  UdeM contended that on June 16, 2010, Barron executed the 2010 First Amendment and 2010 Release by initialing each page.  UdeM denied making misrepresentations to Barron and asserted that it was clear that the First Amendment and the Release were final and intended to be binding once executed.  UdeM also contended that in and after June 2010, Uretek deposited checks from UdeM that clearly stated that they were under the First Amendment to the Sublicense Agreement.

UdeM alleged that the June 2010 Release was of all claims Uretek might have against UdeM from 2003 through June 16, 2010, which includes all the claims Uretek asserted in this lawsuit.

4

UdeM asserted that it paid Uretek in exchange for the Release, that no more money is owed, and that Uretek wrongfully terminated the Sublicense Agreement.  UdeM also asserted several counterclaims, including for a declaratory judgment that the 2003 Sublicense Agreement was modified by the May 2010 Letter Agreement and June 2010 First Amendment, which are valid and enforceable, and for specific performance of the 2003 Sublicense Agreement as modified.

The June 2010 First Amendment to the 2003 Sublicense Agreement recited that it was for $10 and other "good and valuable consideration."  The June 2010 First Amendment made a number of changes to the 2003 Sublicense Agreement.[1]  The Amendment retained the covenant not to

---

[1] Uretek listed the following changes in the 2003 Sublicense Agreement made by the June 2010 First Amendment:

- the acknowledgment of Uretek's ownership of trade secrets, confidential information, and know-how was deleted from Section 1 ¶ A;
- UdeM's obligation to honor its assigned "Field of Use" was deleted from Section 1 ¶ E;
- UdeM's obligations of confidentiality and non-competition with Uretek were removed from the Sublicense by deletion of Section 1 ¶ G, deletion of the last sentence of Section 2 ¶ B, and the complete deletion of Section 2 ¶ C;
- the right to additional royalties from UdeM's use of Uretek's Deep Injection Patent was removed by deletion of Section 3 ¶ B;
- UdeM's covenant of "Best Efforts" was removed from the Sublicense by deletion of Section 4;
- Uretek gave up the right to protect its trade secrets and confidential information through an injunction by deletion of the last sentences of Section 8 ¶ B 1 & 2;
- UdeM was relieved of the obligation to carry general liability insurance by Deletion of Section 8 ¶ C;
- "Field of Use" was again deleted with changes to Section 8 ¶ D;
- Uretek's right to terminate the Sublicense due to prohibited purchases of 486 Star polymer from a source other than Uretek and penalties for such violations were removed of Section 8 ¶ H 2 & 3;
- UdeM's obligation to purchase 100,000 pounds of polymer per year from Uretek, a $300,000 a year obligation according the Alvarez Declaration, was eliminated by deleting Section 8 ¶ I;
- Uretek's right to audit UdeM to confirm compliance with the Sublicense was surrendered by Uretek with the deletion of Section 11;

compete by Uretek but revised it to delete what had been a defined term, "Field of Use," and limited the obligation not to compete to the sale, dissemination, or application of Uretek processes, products, or services using those processes or services within the "Territory."

Paragraph 8H of the 2003 Sublicense Agreement was extensively modified. Paragraph 8H(1) had stated as follows:

> H.   Restrictions on Use of:   URETEK PROCESSES, PRODUCTS and 486 STAR
>
>   1.   Purchase of Unique Polyurethane Component Materials
>
>   In order to provide the services of the URETEK PROCESSES licensed under this Agreement, SUBLICENSEE agrees to use only 486 STAR with all URETEK PROCESSES. Due to the unique nature of 486 STAR, SUBLICENSEE is required to purchase and URETEK is required to timely sell to SUBLICENSEE 486 STAR in amounts sufficient to meet SUBLICENSEE's needs for use in URETEK PROCESSES from only URETEK at its posted regular uniform prices for all SUBLICENSEES.

As revised in the June 2010 First Amendment, ¶ 8H(1) stated:

> 15.   Sale of Polyurethane Component Materials, 486 Star and Polymers. URETEK shall make available to SUBLICENSEE all of the materials that are the subject of U.S. Patent No. 6,521,673 B1 and all polymers hereafter offered for sale by URETEK or made available by URETEK to any of its LICENSEES or SUBLICENSEES, including but not limited to the Starlift entities. Such materials shall be made available upon request by SUBLICENSEE and the purchase price therefor shall be the actual cost for the materials as purchased or ordered by URETEK for

---

- UdeM's covenant to disclose intellectual property improvements to the Uretek Process was removed by deletion of Section 14 ¶ C 6; and
- Uretek surrendered its right to approve an assignment of the Sublicense and all discretion as to an assignment was vested in UdeM by rewriting of Section 15 ¶ A 1.

> SUBLICENSEE and re-sold and actually delivered by URETEK to
> SUBLICENSEE.    At the sole option and discretion of
> SUBLICENSEE, payment for such materials may be made through
> NDT, Inc., a Delaware corporation.

Paragraph 8H(2) had made UdeM's failure to purchase 486 Star from Uretek a basis for terminating the Sublicense Agreement and provided liquidated damages for UdeM's purchases from others.  That paragraph was deleted in the June 2010 First Amendment.  Paragraph 8H(3) had prohibited UdeM from purchasing Uretek products from any source other than Uretek and made that a basis for terminating the Sublicense.  That paragraph was deleted in the June 2010 First Amendment.  Paragraph 8(H)(4) had made a sale by UdeM of services using Uretek Processes to a customer outside the "Territory" or "Field of Use" a basis for terminating the Sublicense Agreement and for liquidated damages.  That was replaced in the June 2010 First Amendment by a paragraph stating that if UdeM made such sales outside the "Territory", liquidated damages would be owed to Uretek, and if Uretek made such sales inside the "Territory", it would owe liquidated damages to UdeM.

Paragraph 8(I) had required UdeM to purchase a minimum annual amount from Uretek each calendar year.  That paragraph was deleted in the June 2010 First Amendment.  A new provision, ¶ 24, was inserted.  It stated:

> 33.    ROYALTIES TO BE PAID BY SUBLICENSEE.  In
> addition to the cost of Polyurethane Component Materials, 486 Star
> and polymers to be paid by SUBLICENSEE to URETEK pursuant to
> paragraph 8(H)(1) above, SUBLICENSEE shall pay to URETEK a
> royalty on all materials that are the subject of U.S. Patent No.
> 6,521,673 B1 purchased by SUBLICENSEE, such royalty to be
> calculated and paid at the rate of fifty (50) percent of the lesser of (a)
> the actual cost of such materials only as purchased by
> SUBLICENSEE from URETEK, or (b) the actual cost of such
> materials only as purchased by URETEK for, and re-sold and actually
> delivered by URETEK to, SUBLICENSEE.  At the sole option and

> discretion of SUBLICENSEE payment for such royalties may be
> made through NDT, Inc., a Delaware corporation.

In seeking specific performance as part of the final judgment, UdeM emphasizes the exclusivity and noncompete provisions of the 2003 Sublicense Agreement. These were not deleted by the June 2010 First Amendment. The Sublicense Agreement granted UdeM "an exclusive sublicense to provide and distribute services using the URETEK Processes and URETEK PRODUCTS in" Mexico. The covenant not to compete provides:

> For the term of this Agreement, URETEK warrants that it (i) will not engage in any manner in the sale or application of services utilizing URETEK PROCESSES and/or URETEK PRODUCTS in the defined Territory (ii) will not engage in any other enterprise that would tend to reduce the value of the URETEK PROCESS or the rights granted hereunder; and (iii) will not sell, disseminate or cause to be disseminated the URETEK PROCESSES and/or the URETEK PRODUCTS in the defined TERRITORY.

(2003 Sublicense Agreement, at 4 ¶ 2 A & 5 ¶ 7; First Amendment, at 2, ¶ 9).

The June 2010 Release provided that UdeM and other entities were released from liability for Uretek's claims through June 16, 2010, including those arising under the 2003 Sublicense Agreement and the Mexico City project.

At trial, the jury answered specific questions, as follows:

**JURY QUESTION NO. 1**
> Do you find that Uretek has proven by a preponderance of the evidence that UdeM obtained Brent Barron's initials on the June 2010 Amendment by fraudulently misrepresenting that the document was only a draft and not intended to be final or binding?
>
> Answer "Yes" (Uretek proved fraudulent misrepresentation) or "No" (Uretek did not prove fraudulent misrepresentation).
> Answer:          <u>NO</u>
>
> If you answered Jury Question No. 1 "No," then answer Jury Question No. 2. Otherwise, proceed to Jury Question No. 3.

8

**JURY QUESTION NO. 2**

Do you find that Uretek has proven by a preponderance of the evidence that it did not agree to amend the 2003 Sublicense Agreement in June 2010?

Answer "Yes" (Uretek did not agree to amend) or "No" (Uretek did agree to amend).

Answer:         YES

Proceed to Jury Question No. 3.

**JURY QUESTION NO. 3**

Do you find that Uretek has proven by a preponderance of the evidence that UdeM obtained Brent Barron's initials on the June 2010 Release by fraudulently misrepresenting that the document was only a draft and not intended to be final or binding?

Answer "Yes" (Uretek proved fraudulent misrepresentation) or "No" (Uretek did not prove fraudulent misrepresentation).

Answer:         NO

If you answered Jury Question No. 3 "No," then answer Jury Question No. 4. Otherwise, proceed to Jury Question No. 5.

**JURY QUESTION NO. 4**

Do you find that Uretek has proven by a preponderance of the evidence that it did not agree to the June 2010 Release?

Answer "Yes" (Uretek did not agree to the Release) or "No" (Uretek did agree to the Release).

Answer:         NO

Proceed to Jury Question No. 5.

**JURY QUESTION NO. 5**

Do you find that UdeM has proven by a preponderance of the evidence that Uretek ratified either or both of the following:

a.      The June 2010 Amendment to the 2003 Sublicense Agreement?

Answer "Yes" or "No."

Answer:         YES

b.      The June 2010 Release?

Answer "Yes" or "No."
Answer:          <u>YES</u>

If you answered "Yes" to both Jury Questions No. 5(a) and (b), you
need not answer any more questions.

The jury did not need to, and did not, answer questions asking whether UdeM breached the

2003 Sublicense Agreement by failing to buy a certain amount of polyurethane foam in 2010 or

whether UdeM failed to pay the full price for the foam and services Uretek provided for the Mexico

City project in 2009.  The jury also did not need to, and did not, answer any questions about

damages to Uretek from these two alleged UdeM breaches.

The posttrial motions require this court to decide whether to set aside the jury's verdict that

Uretek ratified the 2010 First Amendment (the jury verdict on the 2010 Release is not challenged);

whether to grant UdeM a declaratory judgment that the 2003 Sublicense Agreement as amended is

valid, enforceable, and binding; whether to grant UdeM specific performance of the remaining ten

years of the Agreement as amended, particularly the exclusivity and noncompete provisions; and

whether to award UdeM attorney's fees.  These issues are addressed below.

## II.    Uretek's Renewed Motion for Judgment as a Matter of Law on Ratification

Uretek filed a renewed motion for judgment as a matter of law on the affirmative defense of

ratification.  (Docket Entry No. 58).  Uretek argues that the evidence was insufficient to show that

in June 2010, Uretek ratified the First Amendment to the Sublicense Agreement.

"To preserve error for failure to grant a motion for judgment, 'the moving party must file

both a pre-verdict Rule 50(a) motion at the close of all the evidence and the renewed Rule 50(b)

motion.'"  *Consolidated Comp., Inc. v. Lexington Ins. Co.*, 616 F.3d 422 n.4 (quoting *Satcher v.*

*Honda Motor Co.*, 52 F.3d 1311, 1315 (5th Cir. 1995).  After all the evidence had been presented

to the jury, Uretek moved for a directed verdict on UdeM's affirmative defenses, including its ratification defense. This was sufficient to preserve the issue. "[T]echnical precision is not required in Rule 50(a) motions." *Palmerin v. Johnson Cnty., Kan. Bd. of Cnty. Com'rs*, 2013 WL 1749428, at *3 (10th Cir. 2013). The party need only "adequately notify the court of the issues it is raising." *Id.*

Although Uretek's renewed motion is properly before this court, it is denied because the record evidence is sufficient to support the jury's verdict that Uretek ratified the June 2010 First Amendment (as well as the June 2010 Release, a verdict that Uretek does not challenge). The jury verdict must be upheld unless "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a)(1). A court must consider whether there is "a conflict in substantial evidence on each essential element . . . [of the relevant claim] such that a reasonable jury could find in [the prevailing party's] favor." *James v. Harris Cnty*., 577 F.3d 612, 617 (5th Cir. 2009) (internal citations omitted).

The jury found that Uretek did not agree to the June 2010 First Amendment and did agree to the June 2010 Release. The jury also found that Uretek had ratified both the June 2010 First Amendment and Release. Uretek argues that the only basis for finding ratification of the June 2010 First Amendment was that it cashed a $10.00 check dated June 16, 2010. Uretek recognizes that the check, No. 1009, stated on its face: "As per first amendment to Sublicense Agreement between Uretek, Inc. & Ureteknologia de Mexico." Uretek argues that, as Barron testified, the check was "negligently cashed."

Under Texas law, a person ratifies an unauthorized act if, by word or conduct, with knowledge of all material facts, he confirms or recognizes the act as valid. *Miller v. Kennedy &*

*Minshew*, 142 S.W.3d 325, 342–43 (Tex. App.—Fort Worth 2003, pet. denied); *Mo. Pac. R.R. Co. v. Lely Dev. Corp.*, 86 S.W.3d 787, 792 (Tex. App.—Austin 2002, pet. dism'd).  Ratification need not be shown by express word or act but may be inferred by a course of conduct.  *Miller*, 142 S.W.3d at 342–43; *Mo. Pac. R.R. Co.*, 86 S.W.3d at 792.

There was sufficient evidence to support the jury's ratification finding.  The June 16, 2010 $10.00 check 1009 Uretek deposited was clearly marked "Per First Amendment to Sublicense Agreement."  It was cashed with another check, also dated June 16, 2010 and for $10.00, check 1012.  The memo section of that check stated "Full release Uretek USA, Inc. to [UdeM]."  Two other checks, one for $76,950.89 and identified as "Full payment on Technical Assistance" and one for $225,471.05 and identified as "Full payment on Royalties," were also dated June 16, 2010 and deposited.  The references on all these checks were clear and easy to identify.  *Cf. Coastal Plains Dev. Corp. v. Tech-Con Corp.*, 531 S.W.2d 143, 147 (Tex. Civ. App.—Houston [1st Dist] 1975, writ ref'd n.r.e) ("[I]f the written terms of the draft expressly designated the purpose for which the payment was made, such designation, upon acceptance of the draft, became an integral part of the parties' agreement.").

Uretek argues that its acceptance of the $10 check could not have ratified the First Amendment to the 2003 Sublicense Agreement because $10 was not sufficient consideration to make the ratification effective.  Uretek relies on several cases addressing whether the additional consideration offered in a lease agreement containing an option to purchase was "nominal."  The issue in those cases was whether a security interest under § 1.203 of the Texas Business and Commercial Code was created.  Uretek does not explain how these cases bear on the issues it raises in its renewed motion for judgment as a matter of law.  Uretek also fails to address this court's

previous ruling granting summary judgment in UdeM's favor on Uretek's argument that the First Amendment was ineffective due to the absence of new consideration.  (Docket Entry No. 47). Under § 2.209 of the Texas Business and Commercial Code, "an agreement modifying a contract [for the sale of goods] needs no consideration to be binding."  This court found that the contract at issue was a mixed contract that was predominantly for the sale of goods under the Texas UCC.  As a result, no additional or new consideration was required to make the June 2010 First Amendment effective as a modification of the 2003 Sublicense Agreement.  This court also found that even if the 2003 Sublicense Agreement was not a contract for the sale of goods, there was valid and sufficient consideration for the 2010 First Amendment.  Uretek's argument that the ratification was ineffective for inadequate consideration fails.

Additionally, in December 2010, several months after Uretek accepted the $10 check under the First Amendment, it accepted and deposited two other checks from UdeM, one dated December 8, 2010, in the amount of $25,230, and one dated December 15, 2010, in the amount of $18,021. The memo line on the December 8 check read: "Payment on behalf of Ureteknologia de Mexico, SA CV DI Royalties paid in full as per first amendment for polymers delivered by Bay Systems October 7-8, 2010.  The memo line on the December 15 check read: "Payment on behalf of Ureteknologia de Mexico SA de CV DI Royalty paid in full as per first amendment for polymers delivered by Bay Systems Oct 15, 2010."  Uretek asserts that these checks do not relate to the Sublicense Agreement as modified by the June 2010 Amendment and are therefore not evidence of ratification.  The fact that the checks clearly stated that they were issued "per" the June 2010 First Amendment to the Sublicense Agreement is evidence that Uretek accepted those checks as payments made under the June 2010 First Amendment.

13

Uretek argues that "DI" referred to deep injection and that the paragraph in the 2003 Sublicense Agreement requiring an additional royalty to be paid for selling a client the Uretek deep injection process was deleted in the 2010 First Amendment. Uretek argues that the June 2010 First Amendment prohibited any deep injection royalty. This Amendment deleted a requirement that Uretek pay an additional royalty for selling the Uretek deep injection process, but it is unclear that the Amendment prohibited any sales. It is also unclear that "DI" on the checks refers to deep injection process sales. The checks refer to the delivery of polymers by Bay Systems. Uretek argues that the June 2010 First Amendment prohibited purchases by UdeM from Bay Systems, but that this prohibition was later deleted, giving UdeM permission to buy directly from Bay Systems "well after June 16, 2010." No citation is provided. It is unclear why, under Uretek's argument, the checks could not have been for purchases after June 16, 2010 and before the cited permission to buy directly was given.

Because the evidence is sufficient to support the verdict, Uretek's motion to set aside the jury verdict that Uretek ratified the June 2010 First Amendment to the 2003 Sublicense Agreement is denied.

### III.    UdeM's Request for Specific Enforcement

UdeM seeks specific enforcement of the 2003 Sublicense Agreement provisions requiring Uretek to sell its technology in Mexico only to UdeM — not to other companies — and forbidding Uretek from competing with UdeM in Mexico by making this technology available to other companies or selling it in Mexico. UdeM agrees that under the June 2010 First Amendment, it has no obligation to order any amount from Uretek each year. But UdeM argues that Uretek cannot make any sales of its products, processes, or services to parties other than UdeM and its authorized

14

subsidiaries in Mexico.  In other words, even if UdeM does not order any product, process, or service from Uretek in Mexico, Uretek cannot sell or sublicense to anyone else in Mexico.  UdeM asserts that its only obligations are that if it does order Uretek proprietary products, processes, or services, it must do so through Uretek and pay a royalty.

Specific performance is an equitable remedy that may be awarded for breach of contract. *Kress v. Soules*, 261 S.W.2d 703, 704 (Tex. 1953); *Living Christ Church, Inc. v. Jones*, 734 S.W.2d 417, 419 (Tex. App.—Dallas 1987, writ denied).  Specific performance is not a separate cause of action, but rather an equitable remedy used as a substitute for money damages when such damages would not be adequate.  *See Scott v. Sebree*, 986 S.W.2d 364, 368 (Tex. App.—Austin 1999, pet. denied).

UdeM has not shown that money damages would be inadequate to compensate for Uretek's termination of the 2003 Sublicense Agreement.  Although UdeM has argued that Uretek refuses to provide it with products, processes, or services and that UdeM has had to turn to third parties, there was no evidence showing why money damages would be inadequate.  Those damages would be the amount by which UdeM's cost of dealing with third parties exceeded the royalty that UdeM would have had to pay Uretek under the 2003 Sublicense Agreement, as amended.  There is no basis to conclude that such damages cannot readily be calculated or are inadequate.

UdeM has argued that it will suffer future economic harm by having Uretek do business with others in Mexico.  But UdeM has made no showing why business losses as a result of Uretek sublicensing or providing the technology to others in Mexico cannot be compensated through money damages.   UdeM did not present sufficient evidence of the nature or extent of the economic harm it has suffered or will suffer or why damages would be inadequate compensation for the wrongful

termination of the Sublicense Agreement.  The absence of a sufficient showing that damages would be inadequate weighs against awarding specific performance.  *See Canteen Corp. v. Republic of Tex. Props., Inc.*, 773 S.W.2d 398, 401 (Tex. App.—Dallas 1989, no writ) ("Generally, contractual rights are not enforced by writs of injunction, since inadequate remedy at law and irreparable injury are rarely shown when a suit for damages for breach of contract is available."); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002).  An "irreparable injury" is one for which actual damages will not adequately compensate the injured party or the damages cannot be measured by any certain pecuniary standard.  *Canteen Corp.*, 773 S.W.2d at 401; *Cytogenlx, Inc. v. Waldroff*, 213 S.W.3d 479, 487 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

Uretek also points out that courts applying Texas law do not order specific performance under a contract that extends long into the future, rather than one that can be presently performed, such as conveying land.  *See, e.g.*, *S. Plains Switching, Ltd. Co. v. BNSF Ry. Co.*, 255 S.W.3d 690, 703 (Tex. App.—Amarillo 2008, pet. denied) (stating that the party's request for specific performance of an agreement by ordering the opposing party to perform a continuous series of acts extending over a long period was "in essence" a mandatory injunction);  *Cytogenix, Inc.*, 213 S.W.3d at 487 (citing *Canteen Corp.*, 773 S.W.2d 398, 401 (Tex .App.—Dallas 1989, no writ)); *Pickard v. LJH Enterprises, Inc.*, 2010 WL 1493105 (Tex. App.—Houston [1st Dist.], April 15, 2010) (affirming a portion of a trial court order requiring performance of an earnest money contract for a property sale but rejecting a portion requiring a management company to take over the property because it would require a party to perform acts into the future over which the court could be asked to exercise supervision).  The specific performance UdeM seeks would require an injunction compelling Uretek to  perform contractual obligations for as many as 10 additional years, with the

prospect of disputes over Uretek's compliance with the exclusivity and noncompete contract provisions coming to this court for resolution and supervision. The need for such an order, which is not capable of present performance, weighs strongly against specific performance.

UdeM's request for specific performance is denied.

## III.    UdeM's Request for Declaratory Judgment

Uretek's argument that a declaratory judgment on UdeM's counterclaims is not available because the relief sought is duplicative is unpersuasive. Under federal law, there is no rule against duplicative relief. The Declaratory Judgment Act allows the court to enter a declaratory judgment "whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Rule 57 of the Federal Rules of Civil Procedure makes clear that a district court cannot decline to enter a declaratory judgment merely because of the "existence of another adequate remedy." FED. R. CIV. P. 57; *Marinechance Shipping Ltd. v. Sebastian*, 143 F.3d 216, 219 (5th Cir. 1998) ("Rule 57 of the Federal Rules of Civil Procedure expressly states that the availability of an alternative remedy does not prevent the district court from granting a declaratory judgment."). As the 1937 Advisory Committee Notes explain, "the fact that another remedy would be equally effective affords no ground for declining declaratory relief." FED. R. CIV. P. 57 Advisory Committee Notes (1937); *see also Tierney v. Schweicker*, 718 F.2d 449, 457 (D.C. Cir. 1983); *United States v. 0.35 of an Acre of Land, More or Less, Situated in Westchester Cnty., N.Y.*, 706 F. Supp. 1064, 1073 (S.D.N.Y. 1988); *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, 2011 WL 4807901, at *6 (S.D. Tex. Oct. 11, 2011), *modified*, 2012 WL 1553045 (S.D. Tex. May 1, 2012) (all discussing the 1937 Advisory Committee notes).      The court grants the declaratory judgment UdeM seeks on its counterclaim that the 2003 Sublicense Agreement, as modified by the June 2010 Amendment and June 2010 Release, is

valid.   UdeM's request under 28 U.S.C. § 2202 for an award of the further relief of specific performance is denied for the reasons stated above.   Because specific performance is denied, there is no basis for granting a declaratory judgment that UdeM is entitled to specific performance.

## IV.    UdeM's Motion for an Award of Attorney's Fees

UdeM seeks attorney's fees under the 2003 Sublicense Agreement, as modified by the 2010 First Amendment, and under Chapter 38 of the Texas Civil Practice and Remedies Code.   UdeM seeks $211,609.88 in fees.   Uretek opposes the fee request on several grounds: the reference to attorney's fees in UdeM's counterclaim is in the prayer for specific performance, the amounts sought are unreasonable, and the supporting documents are insufficient.

UdeM's pleadings are adequate to support its request for attorney's fees as a prevailing party.   The fee claim is not limited to the specific performance counterclaim.   Instead, the fee claim is in a separate numbered paragraph that, although it follows the heading "Count Two," is set out again in the prayer for relief.   And Count Two incorporates the allegations that Uretek breached the 2003 Sublicense Agreement, as modified by the 2010 Amendment, by wrongfully terminating it. Although UdeM did not prevail in its request for specific performance, it did prevail in defeating Uretek's claims for breach of contract and damages, in showing that Uretek had entered into and ratified the June 2010 Release and ratified the June 2010 Amendment.

Texas law controls the attorney's fee issue.   *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) ("State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision.").   Texas law provides that "'[p]arties are free to contract for a fee-recovery standard either looser or stricter' than the fee-recovery standards provided by statute, and courts are bound by the parties' choice." *Mohican Oil & Gas, LLC v. Scorpion Exploration &*

18

*Prod., Inc.*, 337 S.W.3d 310, 321 (Tex. App.—Corpus Christi 2011, pet. denied) (quoting *Intercont'l Group P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009)).  UdeM is entitled to reasonable fees attributable to the claims and defenses on which it prevailed, under both the language of paragraph 34 of the parties' June 2010 First Amendment to the 2003 Sublicense Agreement and § 38.001 of the Texas Civil Practice and Remedies Code.

The term "reasonable attorney's fees" in the parties' agreements is given its generally accepted meaning because the term was not otherwise defined in the agreements.  *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005) ("Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense.").  Uretek appears to argue that the failure to segregate fees incurred for successful claims from those incurred for unsuccessful claims makes the fee application unreasonable, and that the amount of the hours spent and fees sought on some of the tasks, including filing the summary judgment motion, was unreasonable.

As to the first issue, the Texas Supreme Court has recognized an exception to the duty to segregate fees between successful and unsuccessful work "when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts."  *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex. 1991) (internal quotation marks omitted).  The Texas Supreme Court later limited this exception by holding that intertwined facts alone do not make otherwise unrecoverable fees recoverable.  *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006) ("Intertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that

19

they need not be segregated."). The *Sterling* exception still applies when fees for recoverable claims are so intertwined with fees for unrecoverable claims that both can be included in a fee award:

> But *Sterling* was certainly correct that many if not most legal fees in [contract or DTPA] cases cannot and need not be precisely allocated to one claim or the other. Many of the services involved in preparing a contract or DTPA claim for trial must still be incurred if tort claims are appended to it; adding the latter claims does not render the former services unrecoverable.

*Id.* at 313. The exception applies in this case. The time and legal work advancing the claims on which UdeM prevailed and the relief it did not obtain was so intertwined that they cannot and should not be segregated.

Uretek also argues that without a reduction, the fee amount UdeM seeks is unreasonably large. Under Texas law, fee awards are calculated using the "lodestar" method. A court must determine the reasonable hours spent in the case and multiply the hours by the reasonable hourly rate for the work performed. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). Uretek did not object to the hourly rates as unreasonable. The issue is the number of hours and some of the work done. In determining the reasonableness of attorney's fees under Texas law, a court may consider the following factors:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
>
> (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;

(5)  the time limitations imposed by the client or by the circum-
stances;

(6)  the nature and length of the professional relationship with the
client;

(7)  the experience, reputation, and ability of the lawyer or lawyers
performing the services; and

(8)  whether the fee is fixed or contingent on results obtained or
uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).  A lodestar

reduction is warranted when the amounts sought are unreasonable after taking the lodestar factors

into account.  *See Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 801 (5th Cir. 2006) (holding

that the trial court could properly reduce a fee award based on a lodestar factor).

Proof of the hours expended should include "the basic facts underlying the lodestar, which

are: (1) the nature of the work, (2) who performed the services and their rate, (3) approximately

when the services were performed, and (4) the number of hours worked." *El Apple I*, 370 S.W.3d

at 760. UdeM provided billing statements that identify the general type of work performed, the

performing attorney and his or her rate, dates of service, and the number of hours worked.

After a careful review of the invoices submitted, this court finds that no reduction of the

lodestar amount is warranted.  Uretek sought damages of over $900,000 against UdeM, on the

theory that the June 2010 Release and June 2010 First Amendment were not valid or enforceable

and that UdeM had therefore breached the 2003 Sublicense Agreement.  UdeM prevailed in

defeating this damages claim.  To do so, UdeM had to show that the 2010 Release and 2010 First

Amendment were either accepted or ratified by Uretek, removing the minimum purchase

requirement, removing the basis for Uretek's claimed damages, and making Uretek's contract

21

termination improper.  The time spent and the hourly rates charged are reasonable in relationship to the nature and complexity of the case, the issues involved, the amounts at issue, and the experience and expertise of counsel.  Summary judgment motions are common in contract disputes, and there is no basis to find that UdeM's summary judgment submission in this case was improper or unreasonable.  The time UdeM's counsel spent was not excessive in relation to that required to prepare and present the defenses and counterclaims against Uretek, and was sufficiently documented.

UdeM also seeks $7,281.88 in costs under Federal Rule of Civil Procedure 54(d).  That rule provides, in relevant part, that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs — other than attorney's fees — should be allowed to the prevailing party."  FED. R. CIV. P. 54(d)(1).  A district court has wide discretion to award costs to a prevailing party.  *Energy Mgmt. Corp. v. City of Shreveport*, 467 F.3d 471, 483 (5th Cir. 2006).  There is a strong presumption under Rule 54(d)(1) that the prevailing party will be awarded costs.  *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 586 (5th Cir. 2006).

Uretek's argument that this court may only award costs itemized under 28 U.S.C. § 1920 is incorrect.  In *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987), the Supreme Court held that federal courts are bound by the cost limitations set out in 28 U.S.C. §§ 1821 and 1920 absent explicit statutory *or contractual* authorization.  The June 2010 First Amendment to the 2003 Sublicense Agreement states that a prevailing party in an action between the parties is entitled to its reasonable fees and expenses, "including but not limited to court costs," incurred in the action. (2010 Amendment, ¶ 34).  UdeM may recover $7,281.88 in costs from Uretek.

**V.      Conclusion and Order**

For the reasons explained above, UdeM is entitled to a declaratory judgment that the 2003 Sublicense Agreement, as modified by the May 2010 Agreement and June 2010 First Amendment, is valid; that Uretek's termination breached the 2003 Sublicense Agreement as modified; and that the June 2010 Release is valid.  UdeM's request for a declaratory judgment that it is entitled to specific performance and UdeM's request for specific performance are denied.  Uretek's renewed motion for judgment as matter of law is denied.  UdeM's request for $211,609.88 in attorney's fees and $7,281.88 in expenses from Uretek is granted.

No later than **July 12, 2013**, after conferring with Uretek, UdeM must submit a proposed final judgment.

SIGNED on June 27, 2013, at Houston, Texas.

Lee H. Rosenthal
United States District Judge